UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STAR DIRECT TELECOM, INC. and,
UNITED STATES TELESIS, INC.,

                              Plaintiffs,                05-CV-6734T
                                                         **DECISION**
                    v.                                   **and ORDER**

GLOBAL CROSSING BANDWIDTH, INC.,

                              Defendant.
_____

<u>INTRODUCTION</u>

        Plaintiffs Star Direct Telecom, Inc., ("Star Direct") and
United States Telesis, Inc., ("Telesis"), bring this action against
defendant Global Crossing Bandwidth, Inc., ("Global Crossing")
claiming that the defendant engaged in unjust, unreasonable, and
discriminatory conduct pursuant to Sections 201 and 202 of the
Communications Act (codified at 47 U.S.C. §§ 201, 202); breached
several contracts, and committed various torts against the
plaintiffs and plaintiffs customers.  Specifically, plaintiffs
allege in a Twenty-one Count Complaint that Global Crossing, <u>inter
alia</u>: breached contracts in which it agreed to carry plaintiffs'
telecommunications traffic to the United Kingdom; breached
agreements with the plaintiffs with respect to the prices that
Global Crossing would charge for its services; fraudulently induced
plaintiffs to enter into agreements with Global Crossing; made
material and fraudulent misrepresentations to the plaintiffs
regarding its services and pricing; engaged in deceptive business

practices; and tortiously interfered with plaintiffs' contractual, business, and prospective business relations.

Defendant denies plaintiffs' allegations, and moves to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim. Specifically, defendant contends that plaintiffs can not state a federal cause of action pursuant to Sections 201 or 202 of the Communications Act, and therefore this court lacks federal question jurisdiction over the dispute. Defendant asserts that because there is no viable federal cause of action present, the court should decline to exercise supplemental jurisdiction over plaintiffs' state law claims. Global Crossing further argues that even if the plaintiffs may proceed pursuant to Sections 201 and 202 Communications Act, they have failed to state a cause of action pursuant to those sections, and therefore their claims must be dismissed. Finally, Global Crossing seeks dismissal of many of plaintiffs' state law claims for failure to state a cause of action.

<u>BACKGROUND</u>

According to the Complaint, plaintiffs Star Direct and Telesis, along with defendant Global Crossing, are companies engaged in the business of providing telecommunication services to other companies and consumers. The three companies are "common carriers" as that term is defined in the Communications Act ("the

Act"), and as such are subject to many of the Act's rules and regulations.

I.   <u>The Telesis Agreement</u>

On October 18, 2002, Telesis and Global Crossing entered into a contract pursuant to which Global Crossing agreed to provide certain telecommunications services to Telesis, including services allowing Telesis to provide telecommunication service to the United Kingdom (hereinafter the "Telesis Agreement").  After two years of proceeding under the Telesis agreement, Telesis, in December, 2004, requested a rate reduction form Global Crossing for telecommunication traffic provided to the United Kingdom. According to Telesis, Global Crossing agreed to the rate reduction request, and e-mailed confirmation of its agreement on January 5, 2005.

Shortly after Global Crossing agreed to the rate reduction for telecommunication traffic to the United Kingdom, Global Crossing allegedly shut down two of the four facilities used by Telesis to deliver calls to the United Kingdom, thereby compromising Telesis' ability to deliver such calls.  When Telesis attempted to determine why Global Crossing shut down the facilities, Global Crossing allegedly demanded that Telesis agree to stop carrying any traffic to the United Kingdom, and threatened that if Telesis did not agree to such an arrangement, Global Crossing would terminate all service-including domestic service-being provided to Telesis.

Faced with losing its ability to provide domestic telephone services, Telesis allegedly agreed to Global Crossing's demand. Because Telesis lost its capability to provide calls to the United Kingdom via Global Crossing, Telesis was required to contract with alternative service providers at substantially greater rates, including rates higher that Telesis was able to charge its customers.   According to Telesis, the reason that Global Crossing abruptly stopped Telesis' service to the United Kingdom is because Global Crossing itself was purchasing services from other providers, and was unable to pay for those services. Telesis further contends that defendant breached an agreement to apply lower interstate calling rates to certain calls, and instead applied higher intrastate calling rates to those calls.

  II.  The Star Direct Agreement

    On December 1, 2000, plaintiff Star Direct and Global crossing entered into an agreement under which Global Crossing agreed to provide certain telecommunications services to Star Direct under agreed-upon terms and rates. (hereinafter the "Star Direct Agreement").   In April, 2004, Star Direct and Global Crossing entered into a memorandum of understanding pursuant to which the parties agreed to transfer Star Direct's account to Telesis. Essentially, under the terms of the memorandum of understanding, Telesis was to "take over" the Star Direct account, and the services formerly provided by Global Crossing to Star Direct would

then be provided to Telesis under the terms and conditions set forth in the Telesis Agreement.

According to the Complaint, Global Crossing, despite agreeing to the transfer, never effectuated the transfer, and instead continued to bill Star Direct for services that were to have been transferred to Telesis.  Moreover, Global Crossing failed to include traffic and usage generated by the Star Direct account towards the minimum usage requirement contained in the Telesis Agreement.  As a result, Telesis incurred financial penalties for failing to meet its minimum usage requirement.  Telesis claims that it would not have incurred those penalties had Global Crossing properly effectuated the transfer of Star Direct's account to Telesis.  Although Telesis allegedly disputed the penalties and overcharges in accordance with the Telesis Agreement, in October, 2005, Global Crossing threatened to terminate service to Telesis unless Telesis payed the disputed charges.  Global Crossing did not issue such a threat to Star Direct.  After Telesis refused to pay the allegedly unauthorized penalties and overcharges, Global Crossing, on November 8, 2005, began terminating both Telesis and Star Direct's services.  By December 1, 2005, Global Crossing had terminated all service to the plaintiffs.

## DISCUSSION

I.   Defendants' Motion to Dismiss

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal of the Complaint where the Court lacks subject matter

jurisdiction over the dispute.  Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of the Complaint where the plaintiff has failed to state a claim upon which relief can be granted.  When evaluating a Rule 12(b)(6) motion, the court must ascertain, after presuming all factual allegations in the pleading to be true and viewing them in the light most favorable to the plaintiff, whether or not the plaintiff has stated any valid ground for relief.  Ferran v. Town of Nassau, 11 F.3rd 21, 22 (2d Cir. 1993), cert. denied, 513 U.S. 1014 (1994).  The court may grant a Rule 12(b)(6) motion only where "`it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

In the instant case, defendant moves to dismiss the Complaint on grounds that the plaintiffs have failed to state a federal cause of action, and therefore this court lacks subject matter jurisdiction over the dispute.  Global Crossing further contends that if the Court dismisses plaintiffs' federal causes of action, the Court should decline to exercise supplemental jurisdiction over plaintiffs' state law claims.  In the alternative, defendant contends that certain of plaintiffs' state law claims fail to state a cause of action, and therefore, those cause of action should be dismissed.

II.   This Court has jurisdiction over plaintiffs'
      Communications Act Claims

Plaintiffs allege that Global Crossing's actions violated Sections 201(b) and 202(a) of the Communications Act.   Section 201(b) of the Communications Act provides in relevant part that "[a]ll charges, practices, classifications, and regulations for and in connection with [] communication service [provided pursuant to this section] shall be just and reasonable ...."   47 U.S.C. § 201(b).   Section 202(a) of the Communications Act provides that:

> It shall be unlawful for any common carrier to make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services for or in connection with like communication service, directly or indirectly, by any means or device, or to make or give any undue or reasonable preference or advantage to any particular person, class of persons, or locality, or to subject any particular person, class of persons, or locality to any undue or unreasonable prejudice or disadvantage.

47 U.S.C. 202(a).   Plaintiffs contend that Global Crossing's rates and practices were unreasonable and discriminatory, and therefore in violation of the Communications Act.   According to the plaintiffs, because the defendant violated the Communications Act, this court has federal question jurisdiction over the dispute.

Without addressing the merits of plaintiffs' allegations, Global Crossing contends that the court does not have jurisdiction over the dispute because changes to regulations promulgated pursuant to Section 211 of the Communications Act have divested

federal courts of jurisdiction over disputes arising out of Sections 201 and 202 of the Act in cases where the defendant in such an action lacks market power in the relevant market. Specifically, Global Crossing argues that because regulations implementing Section 211 of the Act (which in general governs the filing with the Federal Communications Commission ("FCC") of contracts entered into by common carriers) were amended to exempt the filing of contracts by common carriers who do not possess market power in their respective markets, federal courts no longer have jurisdiction over contract disputes arising under sections 201 and 202 absent an allegation that the party allegedly in breach of the contract possesses market power in the relevant market.  In advancing this argument, Global Crossing contends that in amending the regulations, the FCC explicitly found that common carriers who lacked market power could not, by definition, discriminate or act unreasonably in the telecommunications market because market forces would prevent such behavior. See Policy and Rules Concerning Rates for Competitive Common Carrier Services and Facilities Authorizations Therefor, Sixth Report and Order, 99 FCC2d 1020 at ¶ 12 (1985)(stating that "non-dominant carriers have insufficient market power to engage in [monopolistic] activities that Congress sought to prevent [by enacting Sections 201 through 205 and 214 of the Communications Act.]")  By extrapolation, Global Crossing argues that because a non-dominant carrier can not as a matter of

law exhibit monopolistic behavior, a non-dominant carrier cannot be sued pursuant to Sections 201 or 202 of the Act.

While the defendant argues at length in favor of an interpretation of Section 211 of the Communications Act that would limit federal jurisdiction over disputes arising under Sections 201 and 202 of the Act to cases where the defendant exhibited market power in the relevant market, Global Crossing has failed to cite a single case so holding, and the statutes as written and interpreted do not support such a conclusion.  The mere fact that the FCC, by regulation, no longer requires parties who do not possess market power to file contracts with the agency has no bearing on whether or not federal courts retain jurisdiction to enforce Sections 201 and 202 of the Communications Act, a law that was duly enacted by the United States Congress.  While the FCC may promulgate regulations to effectuate the Communications Act, it cannot, as a matter of law, promulgate regulations that confer, divest, or alter in any way federal Court jurisdiction over the Act.  Kontrick v. Ryan, 540 U.S. 452 (2004)("Only Congress may determine a lower-court's subject-matter jurisdiction")(citing U.S. Const. Art. III, § 1.

Moreover, the FCC has explicitly stated that the exemption from filing contracts pursuant to Section 211 of the Act does preclude enforcement of Sections 201 and 202 against common carriers.  "[F]orbearance from the tariff filing requirements with

respect to non-dominant carriers would not have the effect of abrogating the commands of Sections 201(b) and 202(a) that rates and practices be just and reasonable and not unjustly discriminatory."  91 FCC2d 59 ¶ 20 (1982).

Finally, the United States Court of Appeals for the District of Columbia Circuit, in reviewing a determination of the FCC, has explicitly rejected the notion that exemption from the requirement to file contracts exempts a common carrier from the reasonableness and anti-discrimination provisions of Sections 201 and 202 of the Communications Act.   In <u>Orloff v. Federal Communications Commission</u>, 352 F.3d 415, 418-420 (U.S.App.D.C. 2003) the Court of Appeals held that while the filing of contracts and tariffs had previously formed the basis for determining whether or not a practice was unreasonable or discriminatory, such determinations could continue to be made absent the filing of contracts and tariffs, and the mere fact that non-dominant carriers were exempted from certain filing requirements in no way insulated them from liability for engaging in unreasonable or discriminatory practices. Accordingly, I find that the regulatory change which eliminated the obligation of certain common carriers to file contracts with the FCC does not divest this court of jurisdiction to consider claims under Sections 201 or 202 in cases where either of the parties lacks market power.

Global Crossing argues that even if this court has general subject matter jurisdiction over claims arising under Sections 201 and 202 of the Communications Act, in the instant case, the court lacks jurisdiction over plaintiffs' particular claims because those claims sound in contract law, and in light of the regulations exempting common carriers who do not exercise market power from filing contracts with the FCC, courts now lack jurisdiction over claims in which the alleged unreasonable or discriminatory act relates to a contractual relationship.  For the reasons set forth above, I find that the regulatory change exempting certain common carriers from having to file certain contracts does not divest this court from hearing claims based on unreasonable or discriminatory conduct, regardless of the whether that conduct arose in the context of a breach of contract or from other conduct. Accordingly, I deny defendant's motion to dismiss plaintiff's claims under section 201 and 202 of the Communications Act.

III. <u>Plaintiffs' State Law Claims</u>

A. <u>Tort Claims</u>

1. <u>Misrepresentation</u>

Counts Seven, Eight, Nine and Ten of the Complaint allege that Global Crossing engaged in misrepresentation or intentional or fraudulent misrepresentation with respect to its dealings with Star Direct and Telesis.  Specifically, Telesis contends that Global Crossing supplied false and misleading information relating to its

ability or intention to: charge fees based on an agreed to origination point for calls (regardless of the actual origination point); provide service to the United Kingdom at either the originally negotiated rate or the subsequently reduced rate; transfer Star Direct's business to Telesis, and resolve disputes in the manner agreed to in the Telesis Contract. Star Direct contends that Global Crossing made misrepresentations with respect to its intention or ability to transfer Star Direct's account and usage associated with that account to United States Telesis' account.

To state a claim for negligent misrepresentation, a plaintiff must establish that the defendant made a misrepresentation and: "(1) an awareness by the maker of the statement that it is to be used for a particular purpose; (2) reliance by a known party on the statement in furtherance of that purpose; and (3) some conduct by the maker of the statement linking it to the relying party and evincing its understanding of that reliance." Engler v. Cendant Corp., 434 F.Supp.2d 119, 132 (E.D.N.Y., 2006) (quoting Parrott v. Coopers & Lybrand, L.L.P., 95 N.Y.2d 479, 484 (2000). To state a claim for fraudulent or intentional misrepresentation, the plaintiff must establish that: "(1) the defendant made a material false representation; (2) the defendant intended to defraud the plaintiff thereby; (3) the plaintiff reasonably relied upon the representation; and (4) the plaintiff suffered damage as a result

of such reliance.  <u>Independent Order of Foresters v. Donald, Lufkin & Jenrette, Inc.</u>, 157 F.3d 933, 940 (2nd Cir. 1998)

It is well established under New York law that a breach of contract will not give rise to a tort claim absent an independent duty owed by the allegedly breaching party that arises separately from the contract itself.  <u>Agency Development, Inc. v. MedAmerica Ins. Co. of New York</u>, 327 F.Supp.2d 199, 206 (W.D.N.Y., 2004)(Larimer, J.)("a simple breach of contract may not be transformed into a tort unless a legal duty independent of the contract itself has been violated.")(quoting <u>Fleet Bank of New York v. Douglas-Guardian Warehouse Corp.</u>, 229 A.D.2d 962, 962, 645 N.Y.S.2d 384 (4th Dep't 1996).  In the instant case, the alleged misrepresentations set forth in Counts Seven, Eight, Nine, and Ten of the Complaint relate to duties owed pursuant to the contracts at issue, and therefore, may not stand as independent torts. Accordingly, I grant defendant's motion to dismiss Counts Seven through Ten of the Complaint without prejudice.

2.   <u>Fraudulent Inducement</u>

Plaintiffs, in Counts Eleven and Twelve of the Complaint, allege that Global Crossing made false statements to the plaintiffs in an effort to induce them to enter into contractual relationships with Global Crossing.  Specifically, Star Direct contends that Global Crossing "supplied false information to [it] regarding [Global Crossing's] intention and/or its ability to transfer

Plaintiff Star Direct's account and usage associated with that account to United States Telesis' account" Complaint at ¶ 102. Telesis alleges that Global Crossing provided false information with respect to Global Crossing's ability or willingness to: charge fees based on an agreed to origination point for calls (regardless of the actual origination point); provide service to the United Kingdom at either the originally negotiated rate or the subsequently reduced rate; transfer Star Direct's business to Telesis, and resolve disputes in the manner agreed to in the Telesis Contract.

To state a claim for fraud under New York law, the plaintiff must allege that "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc., 98 F.3d 13, 19 (2nd Cir. 1996). However, when fraudulent inducement is alleged in the context of a contract dispute, "a fraud claim may not be used as a means of restating what is, in substance, a claim for breach of contract." Wall v. CSX Transportation, Inc., ____ F.3d ____, ____, 2006 WL 3682177 at * 3 (2nd Cir. Dec. 14, 2006)(internal quotations omitted). Rather, in contract cases, in order to maintain an action for fraudulent inducement, the plaintiff must allege the existence of a

"misrepresentation that is collateral to the contract it induced." Id.

In the instant case, the alleged misrepresentations all relate to matters that are the subjects of contracts at issue. Plaintiffs' complaints that Global Crossing misrepresented its ability or willingness to transfer Star Direct's business to Telesis' account, and alleged misrepresentations about rating, dispute resolution, and international service are all matters related to the contracts. Because the alleged misrepresentations are not collateral to the contracts at issue, plaintiffs have failed to state a cause of action for fraudulent inducement.

3.   Fraud by Silence

Count Thirteen of the Complaint alleges that Global Crossing committed "fraud by silence" by failing to inform Telesis of its unwillingness or inability to transfer Star Direct's account to Telesis and failing to inform Telesis of Global Crossing's alleged potential inability to provide service to the United Kingdom due to Global Crossing's precarious financial condition.

To state a claim for fraudulent concealment of a fact under New York Law, the plaintiff must first allege the elements of a typical common-law fraud claim.  Specifically, the plaintiff must establish that the defendant, with an intent to defraud, knowingly failed to disclose a material fact, that the plaintiff relied on the defendant's incomplete disclosure, and that the plaintiff was

harmed as a result of the non-disclosure. <u>Hughes v. BCI International Holdings, Inc.</u>, 452 F.Supp.2d 290, 302 (S.D.N.Y. 2006). Additionally, in cases where the alleged fraud resulted from the omission of information by a party, the plaintiff must establish that a duty to disclose such information arose as a result of a special relationship (such as a fiduciary relationship) between the parties, or that a duty to disclose arose as the result of the fact that the defendant possessed "superior knowledge not readily available to the plaintiff" and that the defendant knew that the "plaintiff was acting under a mistaken belief with respect to a material fact." <u>Hughes</u>, 452 F.Supp.2d at 303.

In the instant case, Telesis' fraud claim relating to Global Crossing's alleged inability or unwillingness to transfer Star Direct's business to Telesis is duplicative of its breach of contract claim, and therefore must be dismissed. However, Telesis' claim that Global Crossing failed to disclose its allegedly precarious financial standing that could compromise its duty to perform under the contract, does, on its face, state a claim for fraudulent concealment. Accordingly, I deny Global Crossing's motion to dismiss Count Thirteen of the Complain as it relates to plaintiff's allegation that Global Crossing fraudulently withheld material information relating to its ability to perform under its contract with Telesis.

4.   Breach of the Implied Covenant of Good Faith and Fair
     <u>Dealing</u>

Plaintiffs, in Counts Fourteen and Fifteen of the Complaint, allege that Global Crossing breached its duty of acting in good faith and dealing fairly with them.  Specifically, Star Direct contends that Global Crossing breached its duty by: supplying false information to it regarding Global Crossing's "intention and/or its ability to transfer Plaintiff Star Direct's account and usage associated with that account to United States Telesis' account; failing to transfer Star Direct's account to Telesis; and failing to resolve billing disputes in good faith."  Complaint at ¶ 126. Telesis alleges that Global Crossing breached its duty by:  billing Telesis for amounts that were neither due nor owing; refusing to address billing disputes in good faith; wrongfully threatening to terminate service to the United Kingdom; terminating such service; supplying false information with respect to Global Crossing's ability or willingness to transfer Star Direct's accounts to Telesis, and failing to effectuate such a transfer.  Complaint at ¶ 131.

"New York law imposes an implied covenant of good faith and fair dealing in all contracts, 'pursuant to which neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" <u>Peabody v. Weider Publications, Inc.</u>, 2006 WL 3802214, *5 (S.D.N.Y. Dec. 26, 2006)(quoting <u>Thyroff v. Nationwide Mut. Ins.</u>

Co., 460 F.3d 400, 407 (2d Cir.2006) (citation omitted)). However, in cases where "the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged facts, simply seek the same damages or other relief already claimed in a companion contract cause of action, [the allegations] may be disregarded as superfluous as no additional claim is actually stated." Hall v. Earthlink Network, Inc., 396 F.3d 500, 508 (2nd Cir. 2005); Peabody, 2006 WL 3802214 at *5.

In the instant case, plaintiffs' allegations that Global Crossing breached its duty of good faith and fair dealing merely restate the allegations supporting their claims for breach of contract.  As stated above, Star Direct alleges that Global Crossing misrepresented its intention or ability to transfer Star Direct's account to Telesis, failed to make the transfer, and failed to resolve billing disputes in accordance with the controlling contracts.  All of those duties, however, were duties owed pursuant to or in connection with the contract, and accordingly plaintiffs' allegations do not state a separate cause of action from their causes of action for breach of contract.  The same is true with respect to Telesis' allegations of breach of the duty of good faith and fair dealing.  Accordingly, I grant defendant's motion to dismiss Counts Fourteen and Fifteen of the Complaint without prejudice.

5.   <u>Negligence Per Se</u>

In Count Eighteen of Plaintiffs' complaint, the plaintiffs allege that Global Crossing engaged in negligence <u>per se</u> by acting unjustly and unreasonably towards the plaintiffs in violation of Section 201 of the Communications Act; discriminating against the plaintiffs in violation of Section 202 of the Act, and violating Section 349 of the New York General Business Law.   Complaint at ¶ 145.

Under New York law, a claim of negligence <u>per se</u> may arise in cases where "(1) the plaintiff is among the class of people for whose particular benefit the statute had been enacted; (2) recognition of a private right of action would promote the legislative purpose behind the statute; and (3) creation of the right would be consistent with the overall legislative scheme." <u>Prohaska v. Sofamor, S.N.C.</u>, 138 F.Supp.2d 422, 448 (W.D.N.Y., 2001)(Curtin, J.).

In the instant case, plaintiffs have alleged violations of Sections 201 and 202 of the Communications Act, and Section 349 of the New York Business Law, all of which provide private causes of action to address the harmful acts alleged.  Accordingly, allowing plaintiffs to proceed directly under both the invoked statutes and common law negligence would result in duplicative causes of action. Accordingly, I grant defendant's motion to dismiss Count Eighteen of the Complaint.

6.    <u>Tortious interference with Contract</u>

In Count Nineteen of the Complaint, Telesis alleges that Global crossing tortiously interfered with Telesis' contractual relations with third parties. "Under New York law, the elements of tortious interference with contract are (1) 'the existence of a valid contract between the plaintiff and a third party'; (2) the 'defendant's knowledge of the contract'; (3) the 'defendant's intentional procurement of the third-party's breach of the contract without justification'; (4) 'actual breach of the contract'; and (5) 'damages resulting therefrom.'" <u>Kirch v. Liberty Media Corp</u>, 449 F.3d 388, 401 (2nd Cir. 2006)(quoting <u>Lama Holding Co. v. Smith Barney Inc.</u>, 88 N.Y.2d 413, 424, (1996)).

In the instant case, plaintiff Telesis has failed to allege that Global Crossing intentionally procured the breach of a contract held with Telesis by a third party, and therefore has failed to state a cause of action for tortious interference with contract. Accordingly, I grant defendant's motion to dismiss Count Nineteen of plaintiffs' Complaint.

7.    Tortious interference with prospective contractual relations and Intentional Interference with Current and <u>Prospective Economic Advantage</u>

Plaintiffs allege in Counts Twenty and Twenty-One of the Complaint that Global Crossing interefed with prospective contractual and business relations.

Under New York law, the elements of a claim of tortious interference with prospective business relations are: 1) business relations with a third party; 2) the tortfeasor's interference with those relations; 3) proof that the tortfeasor acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means; and 4) injury to the business relationship. Nadel v. Play-by-Play Toys, 208 F.3d 368, 382 (2nd Cir. 2000).

To state a claim for tortious interference with prospective economic advantage, "the plaintiff must allege that '(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship.'" Kirch v. Liberty Media Corp, 449 F.3d 388,400 (2nd Cir. 2006)(quoting Carvel Corp. v. Noonan, 350 F.3d 6, 17 (2d Cir.2003).

As with a claim for tortious interference with contract, the alleged improper interference with prospective contractual or business relations must be directed toward the third party. See Carvel Corp. v. Noonan, 3 N.Y.3d 182, 192 ("As federal courts applying New York law have recognized, conduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship.") Because

plaintiff has not alleged conduct directed towards its customers, and has not alleged that Global Crossing acted solely out of malice towards the plaintiffs, I grant defendant's motion to dismiss Counts Twenty and Twenty-one of Plaintiffs' Complaint.

    B.   <u>Statutory Claims</u>

    Plaintiffs allege in Counts Sixteen and Seventeen of the Complaint that the defendant engaged in deceptive trade practices with respect to its dealings with them in violation of Section 349 of the New York General Business Law.   Specifically, plaintiffs allege that the defendants violated Section 349 of the General Business Law by: billing Telesis for amounts that were neither due nor owing; refusing to address billing disputes in good faith; wrongfully threatening to terminate service to Telesis' customers; wrongfully terminating such service; providing false and misleading information regarding Global Crossings' intention or ability to transfer accounts from Star Direct to Telesis; failing to transfer accounts from Star Direct to Telesis; failing to address plaintiffs' disputes regarding Global Crossings' charges; and terminating Star Direct's service without notice.   Complaint at ¶¶ 136, 141.

    Section 349 of the New York General Business Law provides generally that it is unlawful to engage in any deceptive act or practice with respect to the transaction of business in New York State.   N.Y. Gen Bus. L § 349(a).   To state a claim for deceptive

trade practices under this section, a plaintiff must establish that: (1) the defendant engaged in an act that was directed at consumers; (2) the act engaged in was materially deceptive or misleading; and (3) the plaintiff was injured as a result of the defendant's act. <u>Oswego Laborers Local 214 Pension Fund v. Marine Midland Bank N.A.</u>, 85 N.Y.2d 20, 25 (1995). While the New York Court of Appeals has stated that Section 349 is "intentionally broad, applying to virtually all economic activity," <u>Blue Cross Blue Shield of New Jersey, Inc. v. Philip Morris USA Incorporated</u>, 3 N.Y. 3d 200, 205 (quotations omitted) it is also well established that because the statute is a <u>consumer</u> protection statute, "[p]rivate contract disputes, unique to the parties . . . would not fall within the ambit of the statute." <u>Oswego Laborers</u> at 25.

Because plaintiffs' allegations relate solely to the defendant's alleged failings pursuant to the parties' contractual arrangements, I find that plaintiffs have failed to state a claim under Section 349. Though the services provided and subsequently discontinued by Global Crossing undoubtedly had an impact on consumers, the acts complained of occurred in the context of the parties' contractual relationships. Those contractual relationships were private, and unique to the parties. Accordingly, even if the deceptive acts complained of did ultimately have an effect on consumers, the plaintiffs cannot state a claim under Section 349 of the New York Business law because the

acts complained of took place within the context of the parties unique, private, contractual relationship.  I therefore grant defendant's motion to dismiss Count Seventeen of the Complaint without prejudice.

### CONCLUSION

Defendant's motion to dismiss Counts One through Three of the Complaint is denied.  Defendant's motion to dismiss Count Thirteen of the Complaint is denied with respect to claims that the defendant failed to disclose its potential inability to perform under contracts entered into with Telesis. Defendants remaining motions to dismiss are granted as follows:

Defendant's motion to dismiss Counts Seven through Ten of the Complaint alleging misrepresentation and fraudulent misrepresentation is granted without prejudice.

Defendant's motion to dismiss Counts Eleven and Twelve of the Complaint alleging fraud in the inducement is granted without prejudice.

Defendant's motion to dismiss Counts Fourteen and Fifteen of the Complaint alleging breach of the duty of good faith and fair dealing is granted without prejudice.

Defendant's motion to dismiss Counts Sixteen and Seventeen of the Complaint alleging violations of Section 349 of the New York General Business Law is granted without prejudice.

Defendant's motion to dismiss Count Eighteen of the Complaint alleging negligence per se is granted without prejudice.

Defendant's motion to dismiss Count Nineteen of the Complaint alleging tortious interference with contractual relations is granted without prejudice.

Defendant's motion to dismiss Count Twenty of the Complaint alleging tortious interference with prospective contractual relations is granted without prejudice.

Defendant's motion to dismiss Count Twenty-one of the Complaint alleging tortious interference with prospective economic relations is granted without prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/ Michael A. Telesca

_____
      MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          January 18, 2007