_____

STAR DIRECT TELECOM, INC. and,
UNITED STATES TELESIS, INC.,

                    Plaintiffs,                    05-CV-6734T
                                                   **DECISION**
          v.                                       **and ORDER**

GLOBAL CROSSING BANDWIDTH, INC.,

                    Defendant.

_____

<u>INTRODUCTION</u>

Plaintiffs Star Direct Telecom, Inc., ("Star Direct") and United States Telesis, Inc., ("Telesis"), bring this action against defendant Global Crossing Bandwidth, Inc., ("Global Crossing") claiming that the defendant engaged in unjust, unreasonable, and discriminatory conduct in violation of Sections 201 and 202 of the Communications Act (codified at 47 U.S.C. §§ 201, 202), breached several contracts, and committed various torts against the plaintiffs and plaintiffs' customers.

By Decision and Order dated January 18, 2007, I dismissed 14 of the 21 counts of the original Complaint. Thereafter, the defendant Answered the Complaint and filed Counterclaims against the plaintiffs.

Global Crossing now moves for summary judgment against the plaintiffs with respect to the remaining counts of the plaintiffs' Complaint. Global Crossing contends that there are no material facts in dispute, and that as a matter of law, it is entitled to

judgment in its favor.  Global Crossing further moves for summary judgment against Telesis with respect to its Counterclaim seeking $1,281,590.11 for amounts due and owing from Telesis. Plaintiff Telesis opposes defendant's motion.   On September 18, 2009, plaintiff Star Direct filed for Chapter 7 Bankruptcy in the Central District of California.  According to counsel for Star Direct, Star Direct has no assets, and therefore, has discontinued any participation in this action.  (See Docket item no. 179)

For the reasons set forth below, I grant in-part and deny in-part the defendant's motion for summary judgment.

BACKGROUND

According to the Complaint, plaintiffs Star Direct and Telesis, along with defendant Global Crossing, are companies engaged in the business of providing telecommunication services to other companies and consumers.  The three companies are "common carriers" as that term is defined in the Communications Act ("the Act"), and as such, are subject to many of the Act's rules and regulations.

On December 1, 2000, Star Direct entered into a carrier services agreement with Global Crossing pursuant to which Global Crossing agreed to provide certain telecommunications services to Star Direct under agreed-upon terms and rates. (hereinafter the "Star Direct Agreement").  Almost two years later, On October 18, 2002, Telesis and Global Crossing entered into a Carrier Services

Agreement, pursuant to which Global Crossing provided, for a fee, certain telecommunications services to Telesis (hereinafter the "Telesis Agreement"). The Star Direct and Telesis Agreements are virtually identical with respect to the services to be provided by Global Crossing. Each agreement included "minimum monthly usage" provisions, pursuant to which Telesis and Star Direct agreed to use a minimum amount of Global Crossing's services, or pay a monetary penalty for failing to meet the minimum usage requirements. Although the Carrier Services Agreements were largely identical, Telesis contends that Star Direct received preferential pricing in its agreement. According To Telesis, it acquired Star Direct in April, 2004, for the purpose of gaining access to the favorable rates available to Star Direct.

After Telesis' acquisition of Star Direct, Global Crossing entered into a Concurrence Agreement with Star Direct and Telesis pursuant to which the parties purportedly agreed to transfer the terms of Star Direct's Agreement to Telesis, and Telesis agreed to become responsible for payment of the account. Global Crossing simultaneously entered into an agreement with Star Direct in which the parties agreed to terminate Star Direct's Carrier Services Agreement. According to Telesis, the purpose of the Concurrence Agreement and the Star Direct Termination Agreement was to combine Star Direct and Telesis' accounts into one account with one monthly minimum usage requirement, and to apply Star Direct's favorable

rates to the new, combined account.  Global crossing contends that the monthly minimum usage provisions were not changed by the Concurrence Agreement.

Telesis claims that after the parties entered into the Concurrence Agreement, Global Crossing failed to implement the Agreement, and instead, continued to bill both Telesis and Star Direct (despite having terminated the Star Direct Agreement); continued to apply the higher Telesis rates rather than the lower Star Direct rates; and continued to enforce monthly usage minimums for both Star Direct and Telesis, all in breach of the Concurrence Agreement, the Star Direct Termination Agreement, and the Telesis Agreement.  Global Crossing contends that it did apply the lower Star Direct rates, that Telesis failed to properly dispute any claims of overcharges pursuant to the Telesis Agreement, and that because the Concurrence Agreement did not change the monthly minimum usage requirements for Star Direct and Telesis, it was entitled to enforce each monthly minimum usage provision.

One of the services provided by Global Crossing to Star Direct and Telesis pursuant to their respective Carrier Services Agreements was the carrying of telecommunications traffic from the United States to the United Kingdom.  Telesis alleges that Global Crossing breached the Telesis Agreement by refusing to carry Telesis's traffic to the United Kingdom.  According to the Complaint, Global Crossing refused to carry Telesis' traffic

because Global Crossing itself was purchasing services from other providers to carry the traffic, and was unable to pay for the services it was purchasing.

Global Crossing contends that it stopped carrying Telesis' traffic to the United Kingdom because Telesis' traffic was disrupting its network, and the network of British Telecom, which was receiving the traffic, all in violation of the Telesis Agreement. Specifically, Global Crossing contends that from January to March, 2005, Telesis began sending an unusually high number of short-duration calls to the United Kingdom, which had the effect of disrupting, or potentially disrupting the communications network of Global Crossing and British Telecom (Global Crossing's partner) which was receiving all of the Telesis Traffic. Global Crossing contends that pursuant to the Telesis Agreement, it had the discretion and authority to discontinue traffic received from Telesis if that traffic threatened to or did in fact disrupt its communications network, or the communications network of its partner British Telecom. According to Global Crossing, it warned Telesis on several occasions to reduce the volume of short-duration calls to the United Kingdom or face interruption or discontinuation of service. Global Crossing contends that Telesis refused to reduce the calls, and therefore, Global Crossing had no other option than to reduce, and then cancel, Telesis' service to the United Kingdom.

Telesis alleges that as a result of having its service to the United Kingdom discontinued by Global Crossing, in alleged breach of Telesis Agreement, it suffered damages in that it was forced to find another service provider and pay higher rates for service to the United Kingdom.

Telesis further contends that Global Crossing breached an oral agreement to apply lower interstate calling rates to certain calls, and instead applied higher intrastate calling rates to those calls. Global Crossing denies entering into such an agreement, contends that there is no record of such an agreement, and further argues that even if there were an oral agreement to change rates, such an agreement is invalid under the Telesis Agreement, which specifically precludes oral modification of the Telesis Agreement.

In its Counterclaims, Global Crossing alleges that Telesis breached the Telesis Agreement by failing to maintain, or pay a penalty in lieu of maintaining, a monthly minimum usage of Global Crossing's services. Specifically, Global Crossing alleges that in consideration of receiving lowered rates, Telesis agreed to minimum usage requirements every month, and agreed to monetary penalties if it failed to meet its minimum usage requirements. Global Crossing alleges that Telesis failed to meet the minimum usage requirements, and failed to pay the monetary penalties assessed against it for failing to meet the usage requirements. Global Crossing further alleges that Telesis has failed to pay for services it has used,

Star Direct also entered into a carrier services agreement with Global Crossing pursuant to which Global Crossing agreed to provide certain telecommunications services to Star Direct under agreed-upon terms and rates. (hereinafter the "Star Direct Agreement"). The parties entered into the Star Direct Agreement on December 1, 2000. In April, 2004, Star Direct and Global Crossing entered into a memorandum of understanding pursuant to which the parties agreed to transfer Star Direct's account to Telesis. Essentially, under the terms of the memorandum of understanding, Telesis was to "take over" the Star Direct account, and the services formerly provided by Global Crossing to Star Direct would be provided to Telesis under the terms and conditions set forth in the Telesis Agreement.

According to the Complaint, Global Crossing, despite agreeing to the transfer, never effectuated the transfer, and instead continued to bill Star Direct for services that were to have been transferred to Telesis. Moreover, Star Direct contends that Global Crossing failed to include traffic and usage generated by the Star Direct account towards the minimum usage requirement contained in the Telesis Agreement. Star Direct claims that as a result of Global Crossings failures to abide by the new agreement, Telesis incurred financial penalties for failing to meet its minimum usage requirement. Telesis claims that it would not have incurred those

penalties had Global Crossing properly effectuated the transfer of Star Direct's account to Telesis.

Although Telesis allegedly disputed the penalties and overcharges in accordance with the Telesis Agreement, in October, 2005, Global Crossing threatened to terminate service to Telesis unless Telesis payed the disputed charges. Global Crossing did not issue such a threat to Star Direct. After Telesis refused to pay the allegedly unauthorized penalties and overcharges, Global Crossing, on November 8, 2005, began terminating both Telesis and Star Direct's services. By December 1, 2005, Global Crossing had terminated all service to the plaintiffs.

## DISCUSSION

I.  Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." When considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the party against whom summary judgment is sought. Scott v. Harris, 550 U.S. 372, 380 (2007). If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could

find in favor of that party, a grant of summary judgment is appropriate. Scott, 550 U.S. at 380 (citing Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986)).

## II. Breach of Contract Claims

### A. The Telesis Agreement

In Count Five of the Complaint, Telesis alleges that Global Crossing breached the Telesis agreement by: (1) charging rates that were not agreed to in the Telesis Agreement; (2) billing Telesis for amounts that were not due or owing; (3) refusing to address billing disputes in good faith; (4) wrongfully threatening to terminate service to Telesis; and (5) wrongfully terminating its service.

Global Crossing moves for summary judgment on Telesis' claims for breach of the Telesis Agreement claiming that (1) it properly charged Telesis for calls based on the agreed upon rates in the Telesis Agreement; (2) Telesis failed to timely dispute most of the bills sent by Global Crossing, and therefore, pursuant to the terms of the Telesis Agreement, Telesis has waived its rights to dispute those charges; (3) Global Crossing properly addressed billing disputes; and (4) Telesis has failed to establish damages resulting from the discontinued traffic to the United Kingdom.

With respect to plaintiff's claims for damages resulting from Global Crossing's termination of telecommunications traffic to the

United Kingdom in alleged breach of the Telesis Agreement, I grant defendant's motion for summary judgment on grounds that plaintiff has failed to produce evidence of damages. By Decision and Order dated August 26, 2010, I sanctioned Telesis for failing to provide requested discovery on the matter of damages related to United Kingdom traffic by precluding Telesis from introducing evidence of amounts it paid to another telecommunications provider for telecommunication services to the United Kingdom that Telesis was required to purchase after Global Crossing discontinued Telesis' United Kingdom service. Because the amounts paid to the competing telecommunications service are the only substantial damages suffered by Telesis for having its United Kingdom service discontinued by Global Crossing, and because Telesis may not offer this evidence, I find that Telesis is unable to establish damages for Global Crossings breach of the Telesis Agreement.

I further grant defendant's motion for summary judgment with respect to Telesis' claim that Global Crossing failed to implement a price reduction that was allegedly agreed to orally by representatives of Global Crossing and Telesis. The Telesis Agreement specifically provides that the terms of the Agreement may not be modified orally, and therefore, any alleged oral modification of the Telesis Agreement would not be binding on any party.

I deny defendant's motion for summary judgment with respect to Telesis' claim that Global Crossing breached the Telesis Agreement by improperly assessing monthly minimum usage charges against Telesis. As stated in Section II. B. below, there are questions of fact as to what minimum monthly usage charges applied to the Telesis Agreement. As further stated in Section II. B. below, I find that Telesis raised the issue of the minimum monthly usage charge with Global Crossing in a timely manner under the Telesis Agreement, and therefore, is not precluded from raising claims related to that dispute in this action.

I further deny defendant's motion for summary judgment with respect to plaintiff's claim that Global Crossing breached the Telesis Agreement by failing to resolve billing disputes in a timely manner. There are significant questions of fact raised by the parties as to whether or not Telesis filed billing disputes in a proper and timely manner, and whether or not Global Crossing acted on the disputes that were filed in a timely manner.

Finally, I deny Global Crossing's motion for summary judgment with respect to Telesis' claim that it was routinely overcharged for the services it received. There are sharp questions of fact as to the rates that were applied to the services Telesis received from Global Crossing, with the parties being unable to agree to, or conclusively establish, the rates that were charged. Nor is the evidence clear as to whether or not Telesis timely disputed some or

all of the alleged over charges, as required under the Telesis Agreement.  Following a searching review of the voluminous exhibits submitted in support of, and in opposition to, Global Crossing's claim that Telesis failed to timely object to the majority of the Global Crossing invoices, (including e-mail communications, billing invoices, notes, and forms) I find that the court cannot definitively distinguish which charges were objected to in a timely manner, and which if any, were not.  These claims present issues of fact that are disputed by the parties, and therefore, cannot be resolved in a motion for summary judgment.  As a result I grant in-part and deny in-part defendant's motion for summary judgment with respect to Count Five of the plaintiffs' Complaint.


      B.   <u>The Concurrence Agreement</u>

Count Six of the Amended Complaint alleges that Global Crossing Breached the Concurrence Agreement by refusing to implement the terms of the agreement.  Specifically, Telesis alleges that Global Crossing: (1) refused to transfer Star Direct's account to the Telesis' account; (2) improperly billed Star Direct for usage that should have been billed to Telesis after the Concurrence Agreement was entered into; and (3) improperly enforced the previous minimum monthly usage requirements against Star Direct and Telesis when in fact under the Concurrence Agreement, only Telesis' minimum monthly usage requirement was to remain in force.

Global Crossing moves for summary judgment with respect to Telesis' claims of breach of the Concurrence Agreement, claiming that Telesis failed to satisfy conditions precedent under the terms of the Concurrence Agreement, and therefore the Agreement never became binding.  As a result, Global Crossing claims that it properly insisted on enforcing both Star Direct and Telesis' monthly minimum usage provisions pursuant to the respective Carrier Services Agreements with each company.  Global Crossing further contends that even if the Concurrence Agreement did become effective, the Agreement was silent with respect to the minimum monthly usage requirements, and therefore, those requirements as set forth in the respective Carrier Service Agreements continued to remain in force.  In either case, Global Crossing alleges that Telesis failed to timely object to the enforcement of the minimum monthly usage requirements, and therefore has waived any right to do so in this case.

I find that there are questions of fact as to whether Global Crossing breached the Concurrence Agreement, and therefore, I deny defendant's motion for summary judgment.  Although Global Crossing contends that the Concurrence Agreement did not become effective because the plaintiff's failed to provide updated financial records as required prior to implementation of the Concurrence Agreement, there is no provision in the Concurrence Agreement which states that implementation of the Agreement is subject to the provision of

any financial or other documents.[1]  Indeed, the Agreement explicitly states that "[e]ach party represents and warrants that it has obtained the proper documentation in order to switch the Transferred Association from [Star Direct] to [Telesis]." Concurrence Memorandum at ¶ 7.  I therefore find that the Concurrence Agreement is a valid, enforceable agreement.

I further find that there is a question of fact as to whether or not the Concurrence Agreement, either alone or when considered in conjunction with the contemporaneous Star Direct Termination Agreement, either reduced Star Direct and Telesis' combined monthly minimum usage requirement, or had no effect on the monthly minimum usage requirement.  According to Telesis, the purpose of the Concurrence Agreement was to fold Star Direct's usage requirement (and the company's more favorable rate structure) into the Telesis account, leaving Telesis with Star Direct's rates, and either the Telesis or Star Direct monthly minimum usage requirement, but not both.  Global Crossing argues that because the Agreement is silent as to monthly minimums, the existing monthly minimums continued for both companies, despite having only one account.  While it is true that the Concurrence Agreement is silent as to the monthly minimum

---

[1] According to the Concurrence Memorandum itself, the only prerequisite to the Concurrence Memorandum becoming effective is that representatives with authority from both Star Direct and Telesis sign and return the Agreement on or before May 3, 2004. See Concurrence Memorandum at ¶ 1.  The Agreement was signed by representatives of Star Direct and Telesis on on April 26, 2004.

usage requirements, in light of the purpose of the Agreement (to combine the accounts of Star Direct and Telesis) and the fact that the monthly minimum requirements of Star Direct were terminated when Star Direct and Global Crossing agreed to terminate the Star Direct Agreement, there is a question as to what monthly minimum usage provision applied to Telesis.

I further find that Telesis is not barred from raising the monthly minimum usage dispute in this action. Global Crossing alleges that Telesis is required by the Telesis' Agreement to raise billing disputes within 90 days from the date of the disputed invoice, and that the 90-day provision applies to disputes arising under the Concurrence Agreement as well. It is clear, however, that at least as early as January 5, 2005 (9 months after the Concurrence Agreement was entered into and 3 months after the Star Direct and Telesis accounts were to be combined) Telesis complained to Global Crossing that the Star Direct and Telesis accounts had not been combined as agreed to in the Concurrence Agreement). See Exhibit 50 to Telesis' Opposition to Defendant's Motion for Summary Judgment)(email from Telesis to Global crossing indicating that it had previously made several requests of Global Crossing to implement the combining of accounts pursuant to the Concurrence Agreement.) I thus find that Telesis put Global Crossing on notice of the billing dispute in a timely manner that does not prevent Telesis from raising the dispute in this forum. I therefore deny

defendant's motion to dismiss Count Six of the plaintiff's Complaint.

### III. Communications Act Claims

#### A.   Section 201(b) of the Communications Act

Telesis alleges in Count Two of the Complaint that Global Crossing's actions violated Section 201(b) of the Communications Act.  As I stated in my January 18, 2007 Decision and Order, Section 201(b) of the Communications Act provides in relevant part that "[a]ll charges, practices, classifications, and regulations for and in connection with [] communication service [provided pursuant to this section] shall be just and reasonable ...."  47 U.S.C. § 201(b).  Telesis contends that Global Crossing's rates and actions were unjust and unreasonable in violation of the Communications Act.

Global Crossing moves to dismiss this cause of action solely on the ground that the allegations underlying Telesis' 201(b) Communications Act claim are the same allegations underlying its breach of contract claims.  Global Crossing further argues that because the plaintiff's claims of breach of contract are without merit, Telesis' claims that Global Crossing engaged in unjust or unreasonable behavior must be dismissed as well.

"To demonstrate liability under § 201 of the FCA, a plaintiff must prove that the defendant employed a "charge, practice,

classification, or regulation that is unjust or unreasonable." Demmick v. Cellco Partnership, 2010 WL 3636216, *18 (D.N.J., September 08, 2010)(citing 47 U.S.C. § 201(b)). In support of its claim that Global Crossing's practices were unreasonable, Telesis claims that Global Crossing failed to implement the Concurrence Agreement, despite the fact that the Agreement was signed by all parties, failed to combine the Star Direct and Telesis Accounts as required by the Concurrence Agreement, failed to correctly apply the new monthly minimum usage requirements as required by the Concurrence Agreement, and failed to timely resolve billing disputes as required by the Telesis Agreement. Because I have found that a question of fact exists as to whether or not Global Crossing breached the Concurrence and Telesis Agreements as alleged by Telesis, I find that a question of fact exists as to whether or not these actions constitute unjust or unreasonable practices under the Communications Act. Accordingly, I deny defendant's motion for summary judgment with respect to Telesis' claim of a violation of Section 201(b) of the Telecommunications Act.

B.    Section 202(a) of the Telecommunications Act

In Count Three of the Complaint, Telesis alleges that Global Crossing violated Section 202(a) of the Telecommunications Act. Section 202(a) of the Communications Act provides that:

> It shall be unlawful for any common carrier to make any unjust or unreasonable discrimination

> in charges, practices, classifications, regulations, facilities, or services for or in connection with like communication service, directly or indirectly, by any means or device, or to make or give any undue or reasonable preference or advantage to any particular person, class of persons, or locality, or to subject any particular person, class of persons, or locality to any undue or unreasonable prejudice or disadvantage.

To state a claim for discrimination under Section 202(a) of the Communications Act, a plaintiff must establish that the common carrier provided similar services under different terms or conditions to similarly situated consumers or users of those services. If the plaintiff can establish that a common carrier provided similar services to "like" consumers under different terms or conditions, it is incumbent upon the defendant to establish that the discriminatory treatment was reasonable. <u>National Communications Ass'n Inc. v. AT & T Corp.</u>, 238 F.3d 124, 127 (2nd Circ., 2001); <u>Telstar Resource Group, Inc. v. MCI, Inc.</u>, 476 F.Supp.2d 261, 273 (S.D.N.Y., 2007).

In the instant case, the Telesis has failed to submit evidence that it was treated differently than similarly situated communications providers with respect to the terms and conditions of services provided to it by Global Crossing. Although Telesis claims that it paid different rates to Global Crossing than did Star Direct, it has failed to establish that Telesis and Star Direct are "like" communications services. That a common carrier

provides different rates for different customers alone will not state a claim for discrimination under Section 202(a) of the Communications Act.  See National Ass'n of Regulatory Utility Com'rs v. F.C.C., 737 F.2d 1095, 1136 (C.A.D.C., 1984) ("The Communications Act . . . does not prevent all discrimination-disparities in prices for similar service-but only unreasonable discrimination).  Telesis has provided no evidence that it and Star Direct are similarly situated communications providers that are entitled to the provision of services by Global Crossing under similar terms and conditions.  Accordingly, it has failed to establish that Global Crossing has discriminated against it in violation of Section 202(a) of the Communications Act.

Telesis contends that Global Crossing provided other similarly situated carriers unfettered access to Global Crossing's services to the United Kingdom, but discriminated against Telesis by restricting, and ultimately terminating Telesis' access to the United Kingdom communications services.  Again, however, Telesis has failed to provide any evidence that it was unjustly treated any differently than similarly situated service providers, and thus has failed to establish discrimination under Section 202(a) of the Communications Act.

IV.  Fraud by Silence Claim

In its Notice of Motion for Summary Judgment, Global Crossing contends that it is seeking Judgment in its favor on all remaining

claims of the Plaintiffs' Complaint. As stated above, in my January 18, 2007 Decision and Order, I dismissed 14 of plaintiff's 21 causes of action, leaving 7 causes of action remaining, including plaintiffs' fraud by silence claim, set forth in Count Thirteen of the Complaint.

Global Crossing, however, has failed to address this cause of action in its motion for summary judgment. Accordingly, because Global Crossing has failed to demonstrate that there are no material issues of fact in dispute regarding this claim, or that it is entitled to judgment as a matter of law with respect to this claim, I deny defendant's motion for summary judgment with respect to plaintiffs' claim of fraud by Silence.

V. <u>Global Crossing's Counterclaim against Telesis</u>.

Global Crossing contends that it is undisputed that it provided telecommunications services to Telesis pursuant to the Telesis Agreement, and that Telesis failed to pay for the services, and failed to timely dispute the majority of charges which it allegedly owes Global Crossing. According, Global Crossing contends that it is entitled to summary judgment in the amount of $1,281,590.11 from Telesis. For the reasons stated above, however, I find that there are questions of fact as to whether the amounts billed by Global Crossing were proper under the terms of the Telesis and Concurrence Agreements, and I therefore deny

defendant's motion for summary judgment against Telesis on its Counterclaim.

## VI. <u>Star Direct</u>

Global Crossing seeks summary judgment against Star Direct on all remaining claims in the Complaint on grounds that Star Direct has failed to oppose Global Crossing's motion for summary judgment. Because Star Direct has failed to oppose defendant's motion, I grant Global Crossing's motion for summary judgment, and dismiss all claims brought solely by Star Direct against Global Crossing.

**CONCLUSION**

For the reasons set fort above, I grant in part and deny in-part Global Crossing's motion for summary judgment.

I deny defendant's motion for summary judgment with respect to Counts Two, Six, and Thirteen of the of the Complaint, and I deny defendant's motion for summary judgment with respect to its counterclaim against Telesis.

I grant defendant's motion for summary judgment with respect to Count Three of the Complaint.

I grant in-part defendant's motion for summary judgment with respect to Count Five of the Complaint. Telesis may not present claims of breach of contract based on Global Crossings discontinuance of Telesis' United Kingdom traffic, and may not

present claims of breach of contract based on the alleged failure of Global Crossing to honor an oral modification of the Telesis Agreement. Telesis may present breach of contract claims based on Global Crossings alleged overcharging for its services, failure to resolve disputes in a timely manner, and failure to apply the appropriate minimum monthly usage provisions to the Telesis Account. Global Crossing may raise as a defense to the claims of overcharges Telesis' alleged failure to timely file objections to the charges, with the exception of overcharges related to monthly minimum usage provisions.

Finally, I grant defendant's motion for summary judgment with Respect to Counts One and Four of the Complaint.

ALL OF THE ABOVE IS SO ORDERED.

S/ Michael A. Telesca

_____
     MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          December 31, 2010