UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STAR DIRECT TELECOM, INC., a California
Corporation and UNITED STATES TELESIS, INC.,
a California Corporation,

                Plaintiffs,

      v.

GLOBAL CROSSING BANDWIDTH, INC.,
a California Corporation,

                Defendant.
_____

                <u>DECISION & ORDER</u>

                05-CV-6734T

      In a decision dated March 22, 2012, I granted plaintiff U.S. Telesis's motion for spoliation sanctions against defendant Global Crossing and ordered that Global Crossing reimburse U.S. Telesis for its attorneys' fees in bringing the motion and an earlier motion to compel.  (Docket # 262).  Familiarity with that decision is assumed.  Despite my exhortations to the parties to negotiate an agreement regarding the amount of the fees to be reimbursed, no agreement was reached.  Accordingly, I must now determine the appropriate amount of the fee award.

      U.S. Telesis has requested reimbursement of $62,337 for 154.3 hours of work performed by two attorneys, Alex Weingarten ("Weingarten") and Eric Carlson ("Carlson").  (April 13, 2012 letter from Alex M. Weingarten, Esq.).  Global Crossing opposes this request as unreasonable and suggests reimbursement of $15,800 is appropriate.  (April 27, 2012 letter from

Eric A. Linden, Esq.).  At issue is the reasonableness of both the number of hours expended and the hourly rate requested.

## DISCUSSION

In deciding the amount of attorneys' fees to be awarded to a prevailing party, the court must determine the lodestar figure, *Perdue v. Kenny A.*, 130 S. Ct. 1662, 1672 (2010), known in this Circuit as the "presumptively reasonable fee," *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). [1]  *See also Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ("[b]oth this Court and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee'").  The Supreme Court has reasoned that the lodestar method results in a presumptively reasonable fee because it "includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee," such as the novelty and complexity of a case and the quality of an attorney's performance – factors that will be subsumed in the determination of reasonable hours spent and reasonable hourly rates, respectively.  *Perdue*, 130 S. Ct. at 1673 (internal quotation omitted).  When fees are being awarded as a sanction, the lodestar figure may then be adjusted "as necessary to assure Rule 37's deterrent objective is achieved."  *Ceglia v. Zuckerberg*, 2012 WL 503810, *4 (W.D.N.Y. 2012).

Calculating the lodestar figure begins with an examination of the prevailing hourly rates in the community in order to "*roughly* approximate[] the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed

---

[1]  Although the Second Circuit expressly abandoned the use of the term "lodestar" in *Arbor Hill*, the Supreme Court reaffirmed its use in a post-*Arbor Hill* decision.  *See Perdue v. Kenny A.*, 130 S. Ct. at 1672 ("the lodestar figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence") (internal quotation omitted).

by the hour in a comparable case." *Perdue*, 130 S. Ct. at 1672 (emphasis in original). *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Ctny. of Albany*, 522 F.3d at 190 (court must determine the "reasonable hourly rate . . . a paying client would be willing to pay," recognizing that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively"). Once the reasonable hourly rate is determined, it must then be multiplied by the number of hours reasonably expended litigating the case in order to arrive at the lodestar figure or "presumptively reasonable fee." *Id.* at 193.


## I.  <u>Reasonable Rate</u>

To determine a reasonable hourly rate, the court must examine "the prevailing market rates in the relevant community." *Perdue*, 130 S. Ct. at 1672 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). *See also Simmonds v. New York City Dep't of Corr.*, 2008 WL 4303474, *3 (S.D.N.Y. 2008) ("[t]he gravamen of a reasonable rate remains the market rate that a reasonable client would expect to pay given 'the nature of the representation and type of work involved in a case'") (quoting *Arbor Hill*, 522 F.3d at 184 n.2)). The burden rests with the party seeking reimbursement to produce "satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 388 F. Supp. 2d 159, 167 (W.D.N.Y 2005) (quoting *Blum v. Stenson*, 465 U.S. at 895-96 n.11). The relevant community is the district in which the case is litigated. *Lochren v. Cnty. of Suffolk*, 344 F. App'x 706, 708 (2d Cir. 2009); *Arbor Hill*, 522 F.3d at 191.

Here, U.S. Telesis's counsel is not from this district, but practices in Los Angeles, California, which is located in the Central District of California. U.S. Telesis has requested that its attorneys be reimbursed at a rate that it contends is reasonable for that geographic area. Specifically, U.S. Telesis seeks reimbursement for Weingarten's time at a rate of $450 per hour and for Carlson's time at a rate of $390. (*See* April 13, 2012 Weingarten Affidavit at ¶ 3). Weingarten affirms that he has been practicing since 1999 and has managed his own law firm continuously since 2005. (*Id*. at ¶ 4). Carlson has been practicing law since 1997 and is an associate at Weingarten's firm. (*Id*.).

Invoking the so-called "forum rule," Global Crossing counters that U.S. Telesis is entitled to reimbursement only at the rate for similar attorneys in this district. Specifically, Global Crossing contends that Weingarten should be reimbursed at a rate of $265 per hour and Carlson at $210. (*See* April 27, 2012 letter from Eric A. Linden, Esq.). U.S. Telesis has not responded to this argument.

Under the forum rule, "courts should generally use the hourly rates employed in the district in which the reviewing court sits." *Simmons v. New York City Transit Auth*., 575 F.3d 170, 174 (2d Cir. 2009) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty of Albany*, 493 F.3d 110, 119 (2d Cir. 2007)). "[D]eviation from the forum rule is only appropriate 'in the unusual case,' in which a litigant demonstrates that her selection of counsel was 'reasonable under the circumstances.'" *Id*. at 175 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty of Albany*, 493 F.3d at 119). Specifically, the Second Circuit has held:

> when faced with a request for an award of higher out-of-district rates, a district court must first apply a presumption in favor of

> application of the forum rule.  In order to overcome that
> presumption, a litigant must persuasively establish that a
> reasonable client would have selected out-of-district counsel
> because doing so would likely (not just possibly) produce a
> substantially better net result. . . .  The party seeking the award
> must make a particularized showing, not only that the selection of
> out-of-district counsel was predicated on experience-based,
> objective factors, but also of the likelihood that use of in-district
> counsel would produce a substantially inferior result.

*Id*. At 175-76.

In determining whether to apply the forum rule, some courts have distinguished between awards made pursuant to a fee-shifting statute and those made as a sanction.  *See, e.g., Ceglia v. Zuckerberg*, 2012 WL 503810 at *8; *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 2011 WL 1598973, *3 (W.D.N.Y. 2011) ("the court has discretion to use out-of-district rates in fixing the amount of an attorneys' fee awarded as a sanction and to deter similar conduct in the future"); *Disabled Patriots of Am., Inc. v. Niagara Grp. Hotels*, 2008 WL 1867968, *3 (W.D.N.Y. 2008).  For example, in *Ceglia v. Zuckerberg*, Judge Foschio recently observed that "in calculating . . . attorney's fees awarded as a sanction, the court is not required to apply the forum rule . . . ; rather, the court has discretion to use out-of-district rates in fixing the amount of an attorney's fee awarded as a sanction."  2012 WL 503810 at *8 (citing *On Time Aviation, Inc. v. Bombardier Capital, Inc.*, 354 F. App'x 448, 452 (2d Cir. 2009)).  In *On Time Aviation*, the Second Circuit upheld a district court's decision to apply an out-of-district rate as a deterrent in setting a sanction amount under Rule 11, acknowledging that "[t]he reasoning behind the calculation of awards under fee-shifting statutes [to compensate the victimized party] . . . is not . . . precisely analogous to that applicable to Rule 11 awards [to deter baseless filings]."  354 F. App'x at 452.  Other courts, however, have applied the forum rule in awarding attorney's fees

as a sanction.  *See*, *e.g.*, *Rates Tech., Inc. v. Mediatrix Telecom, Inc.*, 2011 WL 1322520, *3 (E.D.N.Y. 2011) (declining to award out-of-district rate in intellectual property case); *Field Day, LLC v. Cnty. of Suffolk*, 2010 WL 5490990, *3 (E.D.N.Y. 2010) (rejecting contention that *On Time Aviation* stands "for the proposition that the forum rule is inapplicable where attorney's fees have been awarded as a sanction"); *Carovski v. Jordan*, 2008 WL 3540372, *4 (W.D.N.Y. 2008).

In this case, counsel asserts merely that the rates are reasonable in their geographic region, but provides no documentation to support that request.  *See*, *e.g.*, *Ceglia*, 2012 WL 503810 at *14 ("[i]deally, included in the fee applicant's attorney's affidavits should be information regarding the credentials of each attorney seeking reimbursement, as well as an affidavit by a disinterested local practitioner attesting to the relevant prevailing market rates") (citing *McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 97 & n.5 (2d Cir. 2006)); *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 2011 WL 1598973 at *4 ("to establish the prevailing market rate, the party awarded attorneys' fees must offer evidence that the requested hourly rate is in line with the market rate in the community") (citing *Blum*, 465 U.S. at 896 n.11).  This Court's own research reveals recent attorneys' fees awards in the Central District of California ranging from $275 for an attorney with ten years' experience to $500 for an attorney with over thirty years' experience.  *Compare*, *e.g.*, *Rubenstein v. Nat'l Recovery Agency, Inc.*, 2012 WL 1425144, *4 (C.D. Cal. 2012) *with Perrin v. Goodrich*, 2012 WL 1698296, *6 (C.D. Cal. 2012).  Counsel's rate requests in this case fall at the upper end of the range.  In addition, U.S. Telesis has failed to respond to Global Crossing's contention that the forum rule should be applied in this case.

6

Under these circumstances, I ordinarily would apply the forum rule and would award reimbursement at the local prevailing rate.  In this case, however, I have previously awarded an attorney's fees sanction to Global Crossing at an out-of-district rate.  Specifically, on March 21, 2011, I ordered U.S. Telesis to reimburse Global Crossing $9,782.57 for counsel's fees in preparing for and attending a deposition in California that did not occur.  (Docket # 222 at 16).[2]  The fees requested by Global Crossing were calculated at an hourly rate of $375 – a rate that far exceeds the rate in this district and presumably represents a prevailing rate in the Eastern District of Michigan, where Global Crossing's counsel practices.  (Docket # 214-2).  At the time Global Crossing requested that reimbursement, U.S. Telesis, then represented by Weingarten and Carlson, apparently objected to the amount of the award, but there is no information in the record or in the Court's case file explaining the basis for the objection, such as whether counsel objected to Global Crossing's request for an out-of-district rate.  (*See* Docket # 214).

On this record, it would be inequitable for the Court to apply the forum rule to U.S. Telesis, as urged by Global Crossing.  To do so would allow one party to benefit from out-of-district rates that are higher the prevailing rates in this district, but deny that same benefit to the other party.  For these reasons, I decline to apply the forum rule in this case and will award fees at U.S. Telesis's requested rate of $450 for Weingarten and $390 for Carlson.

## II.  Reasonableness of Hours Expended

I turn next to evaluate the number of hours for which reimbursement is sought. Applications for attorneys' fees should be accompanied by sufficient information to enable the

---

[2]  Familiarity with that decision and its procedural history is assumed.  (*See* Docket ## 205, 211).

reviewing court to audit the hours and determine whether they were reasonably expended. *Disabled Patriots of Am., Inc. v. Niagara Grp. Hotels, LLC*, 688 F. Supp. 2d 216, 226 (W.D.N.Y. 2010); *Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 388 F. Supp. 2d 159, 166 (W.D.N.Y. 2005).  That information generally includes contemporaneously-created time records specifying "for each attorney, the date, the hours expended, and the nature of the work done."  *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983)).

In addition to reviewing the entries, the court must inquire whether the party exercised "billing judgment" in arriving at the total number of hours requested.  *Hensley v. Eckerhart*, 461 U.S. at 434 ("[i]n the private sector, 'billing judgment' is an important component in fee setting[;] [i]t is no less important here") (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980)).  *See also Disabled Patriots of Am., Inc. v. Niagara Grp. Hotels, LLC*, 688 F. Supp. 2d at 226; *Anderson*, 388 F. Supp. 2d at 163.  If the attorney did not properly exercise billing judgment, then the court must reduce the hours to exclude those that were "excessive, redundant, or otherwise unnecessary."  *Hensley*, 461 U.S. at 434.  One way to accomplish that reduction is to evaluate the reasonableness of each individual time entry and to make reductions and exclusions as necessary.  *See*, *e.g.*, *Pasternak v. Baines*, 2008 WL 2019812, *7 (W.D.N.Y. 2008); *Rich Prods. Corp. v. Impress Indus. Inc.*, 2008 WL 203020, *3 (W.D.N.Y. 2008).  Another "practical means of trimming the fat" is to apply a reasonable percentage reduction to the total number of hours requested.  *Kirsch v. Fleet St., Ltd.*, 148 F.3d at 173 (internal quotation omitted).

U.S. Telesis initially sought reimbursement for 75 hours of Weingarten's time at an hourly rate of $425 and 148 hours of Carlson's time at an hourly rate of $380, totaling $96,615.00. (Docket # 235 at ¶ 19). In my decision and order granting U.S. Telesis's request for attorneys' fees, I noted that "[t]his court cannot conceive of any basis on which it would uphold fees and costs of $96,615, or any sum close to that." (Docket # 262 at 15 n.6). Thereafter, U.S. Telesis reduced its request to 36 hours of Weingarten's time and 118.3 hours of Carlson's time, but increased their hourly rates to $450 and $390, respectively, resulting in a total requested reimbursement of $62,337. (*See* April 13, 2012 Weingarten Affidavit). No explanation has been provided for the reduction, such as whether an across-the-board reduction was applied, whether certain types of activities were excluded or whether counsel identified and eliminated redundancies.

In support of its request, U.S. Telesis has submitted a redacted copy of an invoice sent to U.S. Telesis. (*Id*.). A review of the redacted invoice reveals that several entries are so heavily redacted that it is impossible to determine what activity took place on those dates. For example, the bill includes 4.8 hours of Weingarten's time on October 26, 2010 for unspecified research. (*Id*.). A November 10, 2010 entry billing 5.5 hours for Weingarten is so heavily redacted that no corresponding activity can be identified. (*Id*.). All told, there are 16.3 hours attributed to Weingarten and 5.1 hours attributed to Carlson related to activities that cannot be identified due to the redactions. Reimbursement for those hours is thus unwarranted. *See Disabled Patriots*, 688 F. Supp. 2d at 226-27 (billing records do not support reimbursement where they are vague and "offer no clue as to how time was expended"); *Anderson*, 388

F. Supp. 2d at 166 (hours should be reduced where billing records contain only "generic" references to the nature of the work performed).

In addition, the Court's review of the invoice reveals a total of 16 hours billed for preparation of the original motion to compel (3.1 hours for Weingarten; 12.9 for Carlson). Another 15.3 hours were billed for negotiating with Global Crossing the parameters of Global Crossing's search for the 2004 emails and conferring with the Court on those issues (.3 for Weingarten; 15 for Carlson). These hours appear reasonable.

The Court has further analyzed the hours billed for preparing U.S. Telesis's motion for spoliation sanctions. That 26-page motion was filed on July 7, 2011, and was accompanied by a 7-page affidavit with 64 pages of exhibits, and a 307-page appendix. (Docket ## 234-236). The reply was 12 pages and was accompanied by a 4-page affidavit with 93 pages of exhibits. (Docket ## 249, 250). Weingarten spent 5.8 hours drafting the motion, 1.5 hours reviewing the opposition and 4.5 hours drafting the reply. Carlson spent 37.6 hours drafting the motion, 4.5 hours reviewing the response, 37.4 hours drafting the reply and 5.5 hours preparing for the hearing. That hearing lasted approximately ninety minutes according to the Court's records, but also included oral argument on a separate motion by Global Crossing to preclude U.S. Telesis's expert. Indeed the 5.5 hours spent by Carlson on December 5, 2011 preparing for that hearing included review of both motions. (*See* April 13, 2012 Weingarten Affidavit). Weingarten also billed 4.5 hours to prepare for and attend the hearing on that motion. In sum, U.S. Telesis seeks reimbursement for a total of 16.3 hours of Weingarten's time and 85.3 hours of Carlson's time.

Plaintiff's requested reimbursement for over 100 hours of work on the spoliation motion is excessive.  Despite the numerous exhibits to the motion papers, the issues presented in U.S. Telesis's spoliation motion were relatively straightforward.  Moreover, U.S. Telesis's earlier motion to compel addressed much of the same factual background, and counsel had already engaged in correspondence with Global Crossing and the Court on this issue – undertakings that should have substantially limited the amount of time necessary to draft the papers.  Finally, U.S. Telesis should not be reimbursed in full for time that also encompassed work on another motion that was heard at the same time.  On this record and in my judgment, I find that a 40% reduction in the hours billed for the spoliation motions is appropriate, resulting in 9.78 hours of Weingarten's time and 51.18 hours of Carlson's time.  *See*, *e.g.*, *Simmonds v. New York City Dep't of Corr.*, 2008 WL 4303474 at *8 (applying 40% reduction); *Leyse v. Corporate Collection Servs., Inc.*, 545 F. Supp. 2d 334, 337 (S.D.N.Y.) (same), *report and recommendation adopted by*, 557 F. Supp. 2d 442 (S.D.N.Y. 2008); *Anderson v. City of New York*, 132 F. Supp. 2d 239, 247 (S.D.N.Y. 2001) (same).

## <u>CONCLUSION</u>

For the reasons stated above, this Court orders Global Crossing to reimburse

U.S. Telesis for 13.18 hours of Weingarten's time at a rate of $450, or $5,931, and 79.08 hours

of Carlson's time at a rate of $390, or $30,841, for a total of $36,772.

**IT IS SO ORDERED.**


                                          *s/Marian W. Payson*
                                          MARIAN W. PAYSON
                                          United States Magistrate Judge

Dated: Rochester, New York
       July   20  , 2012